**ADVANCED MATERIALS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–621C.

United States Court of Federal Claims.

May 17, 2000.

698

Donald E. Little, Park City, UT, for plaintiff.

Marian E. Sullivan and Randi–Sue Rimerman Serota, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were Jeanne E. Davidson, Assistant Director, David M. Cohen, Director, and Frank W. Hunger, Assistant Attorney General, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on defendant's Motion to Dismiss. Defendant's motion asserts that plaintiff's claim should be dismissed pursuant to Rule 12(b)(1) or alternatively 12(b)(4) of the Rules of the United States Court of Federal Claims. After reviewing the briefs and hearing oral argument, the court hereby DENIES defendant's motion with regard to plaintiff's termination for convenience claim, and GRANTS the motion on the breach of contract claim.

## FACTS

On September 26, 1990, the U.S. Dept. of the Army awarded a cost plus fixed fee contract to Advanced Materials, Inc. (AMI) for the design and fabrication of 56 backpacks to keep troops cool under extreme temperatures. The army terminated the contract for convenience on June 15, 1992, effective May 27, 1992. On July 10, 1992, the termination contracting officer (TCO) told AMI that it could submit vouchers for allowable costs until November 30, 1992. On January 13, 1993, AMI submitted a settlement proposal to the TCO requesting $10,500.70, which AMI was paid on Jan. 27, 1993, subject to later audit.

Settlement of the termination was never officially completed as the two sides bickered over disposal of the remaining government property. On April 11, 1994, AMI submitted a public voucher to the TCO for $18,002.00 for "the total costs and profits" due AMI for the contract. See Def.'s Mot. to Dismiss at 5. The TCO informed AMI that the voucher period had ended in November, 1992, and she would not accept any new vouchers.

AMI submitted a "claim" by letter on June 27, 1994 for the $18,002 previously mentioned plus additional legal and settlement costs for a total of $21,502. AMI presented the letter to the TCO as a "claim for equitable adjustment in the contract funding and price for this contract." Def.'s Mot. to Dismiss at 5. AMI included a "certification" that the "claim is submitted pursuant to the Contract Disputes Act," and requested a resolution of the claim within sixty days. *See* Def.'s Mot. to Dismiss at App. 43. The TCO advised AMI on July 18, 1994 that the settlement amounts were not in dispute at that time. In a subsequent letter, the TCO noted the discrepancy between the between the amount in AMI's "claim" versus its settlement proposal, and stated that because the contract had been terminated for convenience, not breached, all claims must be merged within the termination settlement proposal.

On September 6, 1994, AMI wrote the TCO and notified her that because she had not resolved the claim within sixty days, AMI deemed it denied. AMI also informed the TCO that if she did not produce a final decision within fifteen days from the date of the letter, AMI would file a claim in the United States Court of Federal Claims. AMI filed this action on September 21, 1994.

## DISCUSSION

### I. JURISDICTION

■ The United States, as sovereign, is immune from suit unless Congress specifically waives this immunity. *See United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957). Pursuant to the Tucker Act, this court has jurisdiction to "render judgment upon any claim against the United States founded … upon … any Act of Congress." 28 U.S.C. § 1491 (1988). The Contract Disputes Act of 1978(CDA) governs the majority of suits brought in this court that are based upon express contracts and implied-in-fact contracts with the government. *See* 41 U.S.C. §§ 601–13 (1988). In actions brought pursuant to the CDA, Congress has placed conditions on the waiver of sovereign immunity. *See SMS Data Prod-*

*ucts Group, Inc. v. United States,* 19 Cl.Ct. 612, 614 (1990). For the court to have valid jurisdiction under the CDA, there must be: 1) a valid claim submitted to the contracting officer; and 2) a contracting officer's (CO) final decision on that claim. *See* 41 U.S.C. § 605(a) (1988); *James M. Ellett Construction Co. v. United States,* 93 F.3d 1537, 1541–42 (Fed.Cir.1996); *SMS Data Products Group, Inc.,* 19 Cl.Ct. at 614–15.

The contracting officer is required to issue a decision within "sixty days from his receipt of a written request from the contractor that a decision be rendered within that period." 41 U.S.C. § 605(c)(1) (1988). If the contracting officer fails to issue a decision within the required period, the failure will be deemed a decision by the CO denying the claim and will authorize the commencement of an appeal as provided in the CDA. *See* 41 U.S.C. § 605(c)(5) (1988). Thus, the jurisdictional and RCFC 12(b)(1) motion turns on whether AMI submitted a valid claim to the CO. *See Ellett,* 93 F.3d at 1541–42.

### II. STANDARD OF REVIEW

RCFC 12(b)(1) authorizes dismissal of a complaint when the court lacks jurisdiction over the subject matter, and RCFC 12(b)(4) authorizes dismissal if, assuming the truth of all allegations, the complaint fails to state a claim upon which relief may be granted as a matter of law. In ruling upon a motion to dismiss, the court must accept as true the complaint's allegations and construe the facts in the light most favorable to the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is appropriate, however, whenever "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Dismissal pursuant to RCFC 12(b)(1) is appropriate whenever the court is lacking subject matter jurisdiction.

### III. TERMINATION FOR CONVENIENCE

A. Did AMI file a valid "claim" under the

Federal Acquisition Regulation [1] (FAR) with the contracting officer?

■ Defendant contends that AMI's letter to the CO did not meet the requirements necessary to constitute a valid "claim" under the Federal Acquisition Regulation. Under the FAR, as interpreted by the Court of Appeals for the Federal Circuit in *Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1575 (Fed.Cir. 1995) (*in banc*), a non-routine submission must contain three elements: 1) a written demand; 2) seeking as a matter of right; 3) a sum certain. *Ellett* and *Reflectone* hold that both a "termination settlement proposal" (TSP) and "request for equitable adjustment" are non-routine submissions, and if they meet the three-prong test, are valid "claims." *See Ellett,* 93 F.3d at 1542–43; *Reflectone,* 60 F.3d at 1577. As the court in *Ellett* stated, "it is difficult to conceive of a less routine demand for payment than one which is submitted when the government terminates a contract for its convenience." *Ellett,* 93 F.3d at 1542.

However, a TSP that satisfies the *Reflectone* three-prong test does not ripen until it is submitted to the contracting officer for a decision. *Ellett,* 93 F.3d at 1544. Here, AMI submitted a second filing to the CO, specifically labeled a "claim," meeting the three-prong test, updating with increased costs the claims asserted in their TSP, and explicitly requesting a final decision from the CO. The defendant makes much of AMI's decision to submit its revised claim as a "claim" rather than a revised TSP by arguing that this is fatal to jurisdiction. However, this appears to be a technical argument, unsupported by the caselaw, and at odds with recent Federal Circuit opinions defining what constitutes a claim under the FAR.[2] The CO failed to issue a final decision within the mandated sixty day period, thus constituting a denial by default, and shortly thereafter, AMI filed suit in this court.

Under the standards set out in the Federal Circuit's recent *Reflectone* and *Ellett* decisions, AMI clearly submitted a valid "claim" under the CDA to the CO. It then waited the requisite sixty days without a final decision before filing suit in this court. Thus, at a minimum, AMI's termination for convenience claim for costs and damages survives defendant's motion to dismiss.

Defendant also objects to plaintiff increasing its claim from $21,502 to $45,960.22, between the original and amended complaint, as the amount of damages owed. Defendant argues that the increased sum was never submitted to the CO. However, a party is allowed to increase damage amounts so long as they are based on the same underlying claims, which is applicable here—the termination for convenience.

## IV. BREACH OF CONTRACT

A. Under a termination for convenience (T/C), can AMI sustain a breach of contract claim, or is the breach of contract claim subsumed within the T/C?

■ The defendant argues that any claims a contractor might have are subsumed within the termination settlement proposal, relying principally on *Nolan Brothers, Inc. v. United States,* 186 Ct.Cl. 602, 405 F.2d 1250, 1252–53 (1969). *See* Def.'s Mot. to Dismiss, at 19–22. In *Ellett,* where the government raised the same defense, the plaintiff argued that "there is no authority in the CDA or FAR 'for simply eliminating valid contractor claims by terminating the contract.'" *Ellett,* 93 F.3d at 1546. The Federal Circuit agreed with Ellett and explained that, "*Nolan Brothers* does not control for one simple, yet critical, reason. It was decided before the CDA .... Therefore, the analytical underpinnings of

---

1. The Federal Acquisition Regulation (FAR) contains the regulations that pertain to the formulation and administration of government contracts. The FAR requires that all government contracts be written, unless otherwise authorized, and it provides the regulations that address contractors' claims. *See* 48 C.F.R. §§ 2.101, 33.201 (1986).

2. In addition to the *Ellett* and *Reflectone* decisions, the Federal Circuit discusses what constitutes a valid "claim" under the FAR in *Alliant Techsystems, Inc. v. United States,* 178 F.3d 1260, 1265–67 (Fed.Cir.1999). The court in *Alliant* clarifies the meaning of the phrase "as a matter of right" in the regulatory definition of a claim by stating that this phrase "requires only that the contractor specifically assert entitlement to the relief sought." *Id.* at 1265.

the court's reasoning, that the amount of recovery is basically the same whether under the termination clause, an equitable adjustment, or the common law (save for anticipatory profits), does not apply post-CDA." *Ellett,* 93 F.3d at 1546–47.

Thus, a plaintiff may bring independent contract claims, in addition to a Termination for Convenience proceeding, so long as the plaintiff follows the applicable jurisdictional requirements of submitting a claim to the CO for a specific sum of money, and awaits a final decision or the passage of sixty days.

As the *Ellett* court stated: "Our conclusion is buttressed by the FAR. If a contract is completely terminated, the termination contracting officer is required to settle all 'related unsettled contract changes' as part of the final settlement. 48 C.F.R. § 49.114(a) (1995) .... [T]he regulations anticipate the submission of claims independently of the termination settlement proposal." *Id.* at 1547–48.

B. Has AMI failed to state a claim for which relief can be granted with regard to its breach of contract claim because the claim was never submitted to the CO?

 AMI's claim before the CO and original complaint were silent as to the "breach of contract" claim asserted in plaintiff's amended complaint. Plaintiff never filed a distinct claim for "breach of contract" with the CO before amending its complaint in this court. It is possible that plaintiff can overcome defendant's objection that the breach of contract claim was not submitted to the CO, however the claim still fails because plaintiff did not demand "the payment of money in a sum certain ..." with regard to the breach claim. 48 C.F.R. § 33.201 (1986). Furthermore, plaintiff's *Amended Complaint* does not contain the specific demand for money necessary to satisfy the requirements of the FAR's definition of "claim." *See id.*

The court's jurisdiction under the CDA is dependant upon the existence of a final decision by the contracting officer upon a claim for money presently due and owing. 41 U.S.C. § 605(a). Until a claim has been properly submitted to the contracting officer and the contracting officer has rendered a final decision upon that claim, or has been deemed through his inaction to have denied the claim, a contractor has not satisfied the jurisdictional prerequisite. *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 183–84, 645 F.2d 966, 969–70 (1981). Absent a valid "claim," no final decision is possible, and thus, no basis for jurisdiction exists. *See id.* These requirements have repeatedly been stated by the Federal Circuit as prerequisites to jurisdiction in the Court of Federal Claims. *See Ball, Ball & Brosamer, Inc. v. United States,* 878 F.2d 1426, 1428–29 (Fed. Cir.1989); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985).

AMI first raised the breach of contract claim in its Amended Complaint, seeking an additional $24,960.22 in damages "up to the contract funding" amount. Plaintiff's request for additional breach of contract damages was never explicitly submitted to the CO. *Cf. SMS Data Products Group, Inc. v. United States,* 19 Cl.Ct. 612 (1990) (holding that plaintiff's claim for lost profits was not presented to the contracting officer, because it was not encompassed by its claim for compensatory relief). Plaintiff's failure to satisfy the requirements of the FAR's definition of a claim is fatal to its breach of contract claim.

### CONCLUSION

Thus, for the reasons stated above, the court hereby DENIES defendant's motion with regard to plaintiff's termination for convenience claim and GRANTS defendant's motion with regard to plaintiff's breach of contract claim. Accordingly, plaintiff's breach of contract claim is dismissed, and the court will proceed to trial on the termination for convenience issue.

**IT IS SO ORDERED.**