**ATLANTA APPRAISAL SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–383 C.

United States Court of Federal Claims.

Sept. 9, 2002.

Robert B. Hatcher, Atlanta, Georgia, for the plaintiff.

Monica J. Palko, Washington, D.C., with whom were Stuart E. Schiffer, Acting Assistant Attorney General, David M. Cohen, Director, Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, for the defendant. Jud E. McNatt, Trial Attorney, U.S. Department of Housing and Urban Development, Atlanta, Georgia, of counsel.

## OPINION & ORDER

BUSH, Judge.

Currently pending before this court is the defendant's partial motion to dismiss counts I and III of the amended complaint filed by plaintiff, Atlanta Appraisal Services, Inc. (AAS), upon the grounds that the court lacks subject matter jurisdiction and plaintiff's response thereto. For the following reasons, the defendant's partial motion to dismiss counts I and III is granted.

## BACKGROUND

### I. Factual Background

Plaintiff Atlanta Appraisal Services, Inc.[1] is a limited liability company organized under the laws of the State of Georgia, with its principal place of business located in Atlanta, Georgia. In this action, plaintiff challenges the lawfulness of its default termination by defendant; and alleges breach of contract and wrongful contract modifications by the United States Department of Housing and Urban Development (HUD) in conjunction with its administration of Contract No. H04C970029906000. Plaintiff also seeks damages, including but not limited to, loss of profit, interest and attorney fees. This contract became effective on October 1, 1997 and was for the appraisal of single family dwellings within Georgia.

The contract was awarded for a one year period with five option years. Plaintiff alleges the contract required that defendant was to provide post-award training to enable plaintiff to adequately perform. The defendant provided one post-award training meeting. This training meeting was held on September 24, 1997. No further post-award training was provided to plaintiff for several months. Plaintiff contends that it began encountering difficulties performing its contractual obligations due, in substantial part, to demands by defendant "beyond the parameters of the contract and the lack of post-award training." Amended Complaint at ¶ 8.

On November 13, 1997, plaintiff wrote a letter to Janice Cooper, Atlanta Director of Housing, detailing some of these difficulties and related problems. Janice Cooper responded by letter to plaintiff's request for assistance on November 13, 1997.

On December 17, 1997, plaintiff was notified, via letter, of alleged performance deficiencies by Janice Cooper. Plaintiff responded to this letter in a letter dated December 19, 1997. Plaintiff contends in its amended complaint that although it "was continually requesting training and assistance from Defendant... no adequate training or assis-

tance was forth coming." Amended Complaint at ¶ 10.

On April 9, 1998, plaintiff filed a grievance with Charles Gardner, Director, HUD–Atlanta Home Ownership Center, wherein it "advised Mr. Gardner of what amounted to [a] systematic attempt by his subordinates to sabotage and hinder Plaintiff's performance under the contract." Amended Complaint at ¶ 12. On April 15, 1998 plaintiff received a cure notice from HUD. Plaintiff responded to his notice in a letter dated April 15, 1998.

In a June 16, 1998 letter that was received by plaintiff on June 18, 1998, plaintiff was notified that HUD was terminating its contract. The termination was made pursuant to FAR 52.249–8, Default (Fixed–Price Supply and Services APR 1984), which is incorporated in the contract by reference in Section I–1 of the contract. Plaintiff contends that this termination was unlawful and without just cause.

In count I of the amended complaint, plaintiff contends that under FAR subpart 42.5, defendant had an affirmative duty to provide training and assistance to plaintiff to enable it to fully perform under the contract. Plaintiff avers that defendant failed and refused to provide adequate training and assistance and instead sought to "hinder and prevent" plaintiff's performance. Amended Complaint at ¶ 17. Plaintiff further contends that it adequately performed each provision of the contract; that defendant acted in bad faith through its failure to provide adequate training and assistance to plaintiff despite defendant's affirmative duty to do so; that defendant's bad faith conduct constitutes a breach of contract that caused plaintiff actual and future damages; and that plaintiff suffered loss of profit, income, bargain, reputation, consequential damages, and litigation costs, including attorney fees.

In count II of the amended complaint, plaintiff contends that neither defendant nor the contracting officer investigated or sought to remedy plaintiff's grievances of bias, hindrance of performance, inadequate training, and wrongful contractual modification prior to terminating the contract. Plaintiff con-

---

1. This case was originally filed naming both Gerald Bryant and AAS as plaintiffs. AAS is now the sole named plaintiff. *See* discussion in procedural history section *infra*.

tends that the contracting officer's decision to terminate the contract "was not based on his independent reasoned judgment, but was the by–product of misinformation by subordinates of Defendant to discredit plaintiff and cause it to lose the Contract." Amended Complaint at ¶ 23. Accordingly, contends plaintiff, the contracting officer's decision to terminate the contract was arbitrary and capricious and must be vacated. Plaintiff contends that as a result of this conduct, it suffered loss of profit, income, and bargain, injury to reputation, consequential damages, and litigation costs including attorney fees.

In count III of the amended complaint, plaintiff alleges the defendant's allegedly discriminatory acts are violative of the Fourteenth Amendment to the United States Constitution. It contends that it is entitled to compensatory and punitive damages by reason of such acts.

Plaintiff seeks the following:

(1) A judgment finding the defendant wrongfully and materially breached the contract;

(2) An order vacating the default termination decision by defendant;

(3) Damages in the amount of $1,000,000 on each count of the complaint;

(4) Litigation expenses including attorney fees; and

(5) An award of such other and further legal or equitable relief to which it may be entitled.

## II. Procedural Background

Plaintiffs filed their original complaint in this matter on June 15, 1999. Although originally both Atlanta Appraisal Services, LLC and Gerald Bryant were named plaintiffs, the parties by stipulation on the record of November 30, 2000 agreed that the only proper party plaintiff to this action is Atlanta Appraisal Services, LLC, and that Gerald Bryant would be excluded as a party plaintiff. In his January 16, 2001 order, Judge Andewelt ordered as follows: "Plaintiff Gerald Bryant, in his individual capacity, has withdrawn from this action. Accordingly, the case caption shall be changed to list Atlanta Appraisal Services, Inc., as the sole plaintiff. All future filings shall reflect this change."

By order dated July 20, 1999, Judge Andewelt dismissed for lack of jurisdiction plaintiffs' claim in the original complaint for damages that was based on a theory of tortious conduct. On December 20, 1999, defendant filed its motion to dismiss for lack of jurisdiction and, in the alternative, partial motion to dismiss for lack of standing. On January 20, 2000, plaintiffs filed their response to defendant's motion to dismiss for lack of jurisdiction, and in the alternative, partial motion to dismiss for lack of standing. On February 15, 2000, defendant filed its reply brief. On November 30, 2000, Judge Andewelt held oral argument on defendant's motion to dismiss. By order dated December 1, 2000, the court denied defendant's motion to dismiss without prejudice.

During the oral argument held November 30, 2000, the court addressed the government's December 20, 1999 motion to dismiss the original complaint, filed by Gerald Bryant and AAS. At that time, the court issued its determination that AAS had sufficiently stated a claim for wrongful contract termination, although AAS had not specifically delineated the wrongful termination as a separate count of the initial complaint. *See* Transcript of November 30, 2000 oral argument. The court also noted as follows concerning the plaintiffs' failure to present their monetary claims based on contract to the contracting officer prior to filing suit in this court:

The fact that I have jurisdiction over the government's claim means I in effect may be deciding whether the termination for default—I may be deciding whether it was based on racial discrimination or failure to train or whatever, but, on the other hand, it seems to me, subject to being convinced to the contrary, I don't have jurisdiction over the monetary aspects because that's a separate claim. Now, the Court says what do we do ... from here? One thing we can potentially do, at least in terms of this forum, is for you to go ahead, file a motion or I mean file a claim with the contracting officer and get a response to that and then come here and sue in this Court if you're

rejected, and then we can combine those two cases if necessary.

Transcript at 15–16.

During the oral argument, the court also addressed other perceived deficiencies in the original complaint, including the lack of privity between Gerald Bryant and the government. The court provided AAS an opportunity to determine whether it would amend the complaint to cure the deficiencies, or voluntarily dismiss its monetary claim and pursue a different strategy. Judge Andewelt ordered plaintiffs to file a status report on or before January 2, 2001, advising the court as to their intentions with respect to further proceedings in this action, including whether, and if so when, plaintiff intended to file an amended complaint. Pursuant to a subsequent court order, plaintiff filed its amended complaint on January 31, 2001. This complaint no longer identified Gerald Bryant as a plaintiff, and AAS identified as a separate count its claim for wrongful termination. The government ascertained that the amended complaint suffered from significant defects; determined that another motion to dismiss was in order; and contacted counsel for AAS. The parties discussed the matter and contacted Judge Andewelt. AAS expressed its desire to reconsider its options, and contemplated the possibility that it would file a second amended complaint. The court permitted AAS yet another opportunity to cure the perceived deficiencies in the amended complaint, including the failure to submit a claim to the contracting officer for AAS's claim for money damages stemming from breach of contract. The government agreed to hold in abeyance any second motion to dismiss while AAS considered filing a second amended complaint. To date, AAS has filed no amended complaint. On April 19, 2001, counsel for AAS advised counsel for the government that AAS would not file a second amended complaint, and that the government should proceed with its second motion to dismiss.

In turn, on April 20, 2001, defendant filed its partial motion to dismiss. On June 25, 2001, plaintiff filed its response to defendant's partial motion to dismiss. The defendant filed its reply brief on July 9, 2001.

## DISCUSSION

### I. Merits of government's partial motion to dismiss pursuant to RCFC 12(b)(1)

#### A. Count I of plaintiff's amended complaint

■ The Tucker Act, 28 U.S.C. § 1491, this court's jurisdictional statute, does not create a substantive right to recover money damages in this court; rather, it allows recovery for claims founded on the Constitution, an act of Congress, regulation promulgated by an executive department, or any express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). In the instant matter, Atlanta Appraisal Services contends that the court possesses jurisdiction pursuant to the Contract Disputes Act (CDA). Amended Complaint at ¶ 4; 41 U.S.C. § 601, *et seq.;* 28 U.S.C. § 1491(a)(2) (The Court of Federal Claims possesses jurisdiction to consider claims that arise pursuant to the CDA). In this matter, count I of the amended complaint seeks $1 million in damages for an alleged breach of contract.[2] Defendant has moved to dismiss plaintiff's count I, request for breach of damages, on the grounds that the plaintiff never presented that claim to the CO in the first instance.

In order for this court to possess jurisdiction to consider plaintiff's breach of contract claim, AAS must have submitted its breach of contract claim to the contracting officer for a final decision. *See* 41 U.S.C. § 605(a). *See also Croman Corp. v. United States,* 44 Fed.Cl. 796, 800–01 (1999) (quoting *Contract Cleaning Maintenance, Inc. v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987)) (stating that "as a jurisdictional requirement the contractor must 'submit a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of

---

2. It bears noting, however, that plaintiff's intentions vis a vis its monetary damages claim for breach of contract are unclear, as in its response to defendant's partial motion to dismiss plaintiff

asserts: "Plaintiff is before this court for one reason only. That is to contest the within 'default termination.'" Plaintiff's Opposition at 2.

the claim' "). *See also Advanced Materials, Inc. v. United States,* 46 Fed.Cl. 697, 701 (2000) (stating that the contractor's failure to submit its breach of contract claim to the contracting officer for a final decision deprived the court of jurisdiction to consider the breach claim). As discussed *supra* in conjunction with the procedural history of this case, the court has previously afforded AAS two opportunities to submit its breach of contract claim to the contracting officer, and it failed to do so. In fact, AAS does not even allege that it has undertaken this mandatory prerequisite to the court's jurisdiction.

Plainly, the court has provided AAS ample opportunity to amend its complaint to comply with the court's jurisdictional limitations, and AAS has failed to do so. Accordingly, the court lacks jurisdiction to consider count I pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a) and the government's motion to dismiss count I of the complaint for lack of subject matter jurisdiction is granted.

### B. Count III of plaintiff's amended complaint

#### 1. Claim for damages based on race discrimination

■ In count III of plaintiff's amended complaint, AAS seeks $1 million in damages based upon race discrimination. AAS's amended complaint reflects that it considers race discrimination a basis for its ultimate termination, but includes a distinct count for $1 million in damages. It is well-established that the court lacks jurisdiction to entertain claims regarding racial discrimination. This court's jurisdiction to hear claims of race discrimination is limited by Title VII of the Civil Rights Act of 1964 and the Age Discrimination Employment Act (ADEA), both of which grant exclusive jurisdiction over race, sex, and age discrimination claims to the United States District Courts. *Cottrell v. United States,* 42 Fed.Cl. 144, 149 (1998) (citing *McCauley v. United States,* 38 Fed.Cl. 250, 265–66 (1997), *aff'd,* 152 F.3d 948, 1998 WL 224949 (Fed.Cir.1998)); *Dixon v. United States,* 17 Cl.Ct. 73, 77 (1989). Accordingly, there is no jurisdiction under the Tucker Act to entertain claims involving affirmative racial discrimination and to the extent that

plaintiff claims a separate count based on race discrimination, the government's motion to dismiss for lack of subject matter jurisdiction is granted.

#### 2. Race discrimination as a defense to the default termination

■ Although the issue of whether plaintiff may raise race discrimination as a defense to the default termination is not specifically addressed in the pleadings currently before this court, the court will take this opportunity to address this issue. Judge Andewelt explained during the November 30, 2000, telephonic conference that the court would permit AAS an opportunity to demonstrate that the government's termination of AAS's contract was racially motivated. This court is not precluding plaintiff from raising discrimination as a defense to the default termination, insofar as plaintiff may be able to point to racial discrimination in support of any claim it may have of bad faith conduct by the government. It is appropriate to allow plaintiff this opportunity, as it is well-established that the obligation of good faith and fair dealing is implied in every contract with the government, *Maxima Corp. v. United States,* 847 F.2d 1549, 1556–57 (Fed.Cir. 1988), and plaintiff is entitled to attempt to establish a breach of this obligation. The court notes, however, that because government officials are presumed to act in good faith in the discharge of their duties, the burden of proof is high to prevail on a claim of breach of good faith and fair dealing. *Spezzaferro v. FAA,* 807 F.2d 169, 173 (Fed. Cir.1986). *See also Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 543 F.2d 1298, 1301–02 (1976) (stating that "it requires 'well-nigh irrefragable proof' to induce the court to abandon the presumption of good faith and fair dealing"); *Texas Instruments, Inc. v. United States,* 991 F.2d 760, 768 (Fed.Cir. 1993) (stating that to prevail on a claim for breach of good faith and fair dealing, a plaintiff must allege and prove facts constituting a specific intent to injure plaintiff on the part of a government official).

Accordingly, insofar as plaintiff wishes to attempt to demonstrate bad faith in conjunction with its defense of the government's

alleged wrongful termination of the contract by invoking its allegations of racial discrimination it is not precluded from doing so.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) The government's motion to dismiss count I of plaintiff's amended complaint pursuant to RCFC 12(b)(1) is **GRANTED;**

(2) To the extent that plaintiff claims a separate count based on race discrimination, this court lacks jurisdiction to hear such an affirmative claim, and the government's motion to dismiss count III of plaintiff's amended complaint for lack of subject matter jurisdiction is **GRANTED.** Plaintiff is not, however, precluded from raising discrimination as a defense to the default termination;

(3) As there is no just reason for delay pursuant to RCFC 54(b), the Clerk's office is directed to enter judgment in favor of defendant regarding counts I and III of plaintiff's amended complaint;

(4) The parties are to file a **JOINT STATUS REPORT** by or before **October 15, 2002** setting forth a proposed course of future action for these proceedings; and

(5) Each party shall bear its own costs.