Phillip S. WOODRUFF, Plaintiff,

v.

UNITED STATES, Defendant.

No. 06–806C.

United States Court of Federal Claims.

March 18, 2008.

Phillip S. Woodruff, pro se, Upper Marlboro, Maryland.

Robert E. Chandler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Jeanne E. Davidson, Director and Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch. Of counsel, Andrea Nash, Office of Legal Counsel, Federal Aviation Administration, Washington, D.C.

## ORDER

HORN, Judge.

### FINDINGS OF FACT

The plaintiff in this case, Phillip S. Woodruff,[1] is a retired employee of the Federal Aviation Administration (FAA). On September 29, 1995, the plaintiff contends that he slipped and fell at his workplace and sustained injuries which aggravated pre-existing conditions and caused him to miss work from September 29, 1995 to October 3, 1995. Plaintiff underwent surgery on May 1, 1997,

---

1. Although Mr. Woodruff is proceeding *pro se*, he is an experienced litigant. In addition to this case, which was transferred from the United States District Court for the District of Columbia, *see Woodruff v. U.S. Dep't of Transp.*, 448 F.Supp.2d 7 (D.D.C.2006), the plaintiff has filed numerous other lawsuits. *See Woodruff v. Peters*, 482 F.3d 521 (D.C.Cir.2007). *aff'g in part, rev'g in part Woodruff v. Mineta*, 215 F.Supp.2d 135 (D.D.C.2002); *Woodruff v. Peters*, No. 05–2071, 2007 WL 1378486 (D.D.C. May 9, 2007); *Woodruff v. Hartford Life Group Ins. Co.*, 378 F.Supp.2d 546 (D.Md.2005). *See also Woodruff*

*v. Hartford Life Group Ins. Co.*, No. 8:07–cv–00124–RWT (D. Md. filed Jan. 12, 2007); *Woodruff v. McPhie*, No. 1:06–cv–00688–RBW, 2006 WL 1344047 (D.D.C. filed Apr. 14, 2006). An internet search revealed that Mr. Woodruff also is listed as an attorney online at LawyerRoster.com, see Phillip Woodruff, LawyerRoster National Lawyer Directory, http://www.lawyerroster.com/website/lawid568430.html (last visited Mar. 18, 2008), at the same city and zip code listed in his complaint, and the same facsimile number listed in filings with the court.

which plaintiff claims was necessary because of the September 29, 1995 accident. Plaintiff again took medical leave for the period April 30, 1997 to February 1, 1998. The plaintiff resumed work part-time, with a flexible schedule, on February 1, 1998. During this time, the plaintiff was permitted to work from home, and also from a telecommuting center near his home. The plaintiff returned to work in March, 1998 on a full-time basis but retained the privileges of working from home and telecommuting. On September 3, 1998, the plaintiff's supervisor revoked his flexible work schedule and the telecommuting arrangement, requiring that the plaintiff work full-time in the office.

Documents submitted for the record by both the plaintiff and the defendant[2] reflect that the FAA sent the plaintiff at least two notices, one dated January, 31, 1998, and another dated May 3, 1999, asserting that, due to a processing error, the plaintiff had received both workers' compensation and an FAA salary for pay periods 9710 through 9803, April 27, 1997 through January 31, 1998, and pay periods 9902 through 9907, January 3, 1999 through March 27, 1999. The FAA notices claimed that the plaintiff owed the defendant $8,054.70 and $5,814.54 respectively, totaling $13,869.24, the same figure that the plaintiff claims in the complaint filed in this court.

In an attempt to reconcile payroll records, the plaintiff and the defendant had a teleconference with the Office of Workers' Compensation on August 17, 2000. After the conference, the defendant agreed to place the plaintiff on leave without pay, effective the then, current, 20018, pay period, but the parties did not resolve any conflicts relating to prior pay periods.

On January 30,2003, the defendant sent the plaintiff a Bill of Collection pursuant to FAA Order 2770.2G(8)(b)(1) (Oct. 18, 2000).[3]

FAA Order 2770.2G(8)(b)(1) (2000) provides:

When an erroneous payment is discovered, the debtor will receive from the *servicing accounting office, in one communication to the extent practicable,* the following documents:

(a) a notice of indebtedness, captioned "Letter of Indebtedness," stating the amount of the debt and the basis of the debt;

(b) a demand for payment containing a payment due date, captioned "Bill for Collection". The Letter of Indebtedness and the Bill for Collection trigger various timetables for making a repayment agreement, requesting a review of the claim, petitioning for a hearing on the claim, or requesting a waiver of the claim (see paragraph 2 of Appendix 3, Notice of Procedural Rights Regarding Collection of a Debt Owed to the United States Government, below);

(c) a notice of procedural rights under 49 C.F.R. Part 92, "Recovery of Debts to the United States by Salary Offset" (see appendix 3 below);

(d) instructions for requesting a waiver of the Government's claim, which include notice that if a debtor submits a waiver request before the final agency determination of the validity of the debt, validity will be considered to have been conceded (see

---

2. The facts that form the predicate for the agency action to issue an assessment of monies owed by plaintiff and resulting in defendant's contention that plaintiff is not entitled to a waiver of his debt, and to plaintiff's claims and counter-assertions, are not carefully and consistently laid out by either the plaintiff or the defendant in plaintiff's complaint or in the filings submitted to this court by the parties. Nor are the exhibits submitted complete or organized in such a way as to assist in developing a complete chronology. The court has done its best to lay out the necessary facts based on the available record. Regardless, as is discussed below, the plaintiff is not entitled to relief on jurisdictional grounds.

3. The parties disagree as to which version of the FAA order is applicable to the plaintiff's claim. The version of the order applicable between 1997 and 1999, when the alleged overpayments occurred, was FAA Order 2770.2E (June 19, 1992). However, the version applicable at the time the bill of collection was sent on January 30, 2003, and when the plaintiff submitted his waiver request, on February 13, 2003, was 2770.2G (2000). Although the orders utilize somewhat different language, the relevant provisions applicable here are not significantly different in terms of their application to this case. *Compare* FAA Order 2770.2E(6)(b)(1) (1992) *with* FAA Order 2770.2G(7)(a) (2000).

Appendix 4, Waiver—Sample Notice, below);

(e) a copy of any communication regarding the nature of the erroneous payment originated by the servicing human resources organization.

FAA Order 2770.2G(8)(b)(1) (2000) (emphasis in original).

The FAA Order further states in subsection (8)(b)(2) that a person receiving a Bill of Collection may:

(a) reserve the right to request a waiver of the Government's claim, and contest the validity of the debt using the procedures in 49 C.F.R. Part 92, summarized in appendix 3, below. If validity is contested, a waiver request should not be submitted until final agency action determining the validity of the debt, as defined in paragraph 8b(6), below. A waiver request submitted before then will be interpreted as a concession that the payment is due;

(b) pay the debt in full, or arrange in writing for a schedule of payments, on or before the payment due date as specified in appendix 3, below; or

(c) acknowledge the debt and request a waiver, as described in appendix 4, below. If the debt is acknowledged, the waiver request must be submitted on or before the payment due date specified in the Bill for Collection. When the debt is acknowledged, a waiver request submitted after the payment due date will not be considered.

FAA Order 2770.2G(8)(b)(2) (2000). Thus, request of a waiver forecloses the debtor's opportunity to contest the validity of the agency's claim. *See* FAA Order 2770.2G(8)(b)(2)(a) (2000). The plaintiff claims that he was not advised of certain procedural constraints, particularly that a request for waiver on his part precluded his right to contest the claim on the merits.

Section 7(a) of FAA Order 2770.2G (2000) details the standards for granting a waiver:

A waiver may be granted only when collection would be against equity and good conscience, and not in the best interests of the United States. Generally, this criterion will be met by a finding that the errone-

ous payment occurred through administrative error and that there is no indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee. Fault includes more than a proven overt act or omission by the employee. Fault is considered to exist if, in light of all the facts, it is determined that the debtor requesting the waiver knew or should reasonably have known that an error occurred, and fails to make inquiries or bring the matter to the attention of the appropriate officials.

FAA Order 2770.2G(7)(a) (2000).

The plaintiff responded to the Bill of Collection by filing a request for waiver of charges on February 13, 2003, which was denied by the FAA on July 27, 2004. The plaintiff appealed the FAA's decision to deny the waiver request on August 17, 2004. On May 11, 2005, the Assistant Administrator for Financial Services approved the denial of plaintiff's appeal. The plaintiff retired from the FAA on May 8, 2006.

On December 29, 2006, defendant sent plaintiff a delinquency notice informing plaintiff that he had thirty days in which to pay all debts, interest, and administrative costs accrued, totaling $14,589.31. This amount included a claim for $13,869.24, which is the subject of the plaintiff's complaint, and $720.07, for health benefits, which is not included in the plaintiff's complaint. The delinquency notice stated that the plaintiff had the right to an administrative review, which plaintiff requested on January 8, 2007. On January 23, 2007, defendant denied the plaintiff's request for a review, concluding that the agency's denial of plaintiff's waiver request, dated July 27, 2004, and the agency's denial of plaintiff's appeal, dated May 11, 2005, constituted an administrative review, and was the final step in the available administrative review process at the FAA. In the January 23, 2007 letter, the FAA also demanded repayment of the debt, which included the alleged salary overpayments of $13,869.24 and the health benefits of $720.07. The same letter also informed plaintiff that failure to pay the balance on the alleged debt within thirty days "will result in the debt information being referred to the Depart-

ment of Treasury for offset, referred to a private collection agency, reported to a credit bureau, garnish the debtor's wages through administrative wage garnishment (no court order required), and/or referred to the Department of Justice for litigation (Executive Order 12988)."

The plaintiff filed a complaint in the United States District Court for the District of Columbia on July 8, 2005, Docket No. 1:05–cv–01367–RMU. The case was transferred from the district court to this court, after which the plaintiff filed an amended complaint in this court on December 28, 2006. In his amended complaint, Mr. Woodruff makes numerous allegations, many of them factually unsupported. For example, Mr. Woodruff alleges that he does not owe the debt assessed against him, and that "the agency owes Plaintiff more than this amount." The plaintiff's allegations also include mismanagement by the agency, and that the agency fraudulently manipulated time and attendance payroll records regarding over and under payments, tax records, annual leave, sick leave, Thrift Savings Plan amounts, and overcharged for life insurance benefits. The complaint also alleges that the defendant erred in failing to allow plaintiff to repurchase his leave and that the defendant improperly forced him to retire. The plaintiff further claims that the agency erred in denying the plaintiff's request for waiver, and that the defendant did not act within a reasonable period of time regarding his waiver. Additionally, the plaintiff claims that defendant retained or destroyed his personal property, which he allegedly left in his office while he was on leave. The plaintiff cites 5 U.S.C. § 5584 (2000) (Waiver of Overpayments), 28 U.S.C. § 1491 (2000) (The Tucker Act), as well as 28 U.S.C. § 1346(a)(2) (2000) (The Little Tucker Act), as the jurisdictional basis for his complaint. In his various filings in this court, the plaintiff also refers to 5 U.S.C. § 5596 (2000) (The Back Pay Act) as a jurisdictional basis for his leave repurchase claim. Plaintiff also asserts that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (2000), the Rehabilitation Act of 1973, 29 U.S.C. § 791 (2000), and the Due Process Clause of the Fifth Amendment to the United States Constitution provide additional authority for his claims.

On February 21, 2007, seeking to prevent the defendant from pursuing its claim against him until resolution of this case, the plaintiff filed a "Motion for Injunctive Relief and Interpleader," to which the defendant responded. Despite the form of the plaintiff's filing, on March 12, 2007, the defendant agreed that, "[f]or the convenience of the Court and the parties, however, the FAA agrees to forego any further collection action with respect to the salary overpayment of $13,869.24 at issue in this case pending resolution of the claims raised in Mr. Woodruff's complaint by this Court."

Defendant responds to plaintiff's complaint by bringing a motion to dismiss plaintiff's claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), arguing that plaintiff's complaint "fails to assert a valid basis upon which this Court may exercise jurisdiction." Defendant argues that the Tucker Act, 28 U.S.C. § 1491, does not create any substantive rights, absent an independent money-mandating statute, to form the basis for the court's jurisdiction. Further, according to the defendant, 5 U.S.C. § 5584 is not a money-mandating statute and does not apply to the FAA, nor is 5 U.S.C. § 5596, the Back Pay Act, money-mandating. In addition, the Little Tucker Act, 28 U.S.C. § 1346, does not apply to this court. In the alternative, the defendant argues that the plaintiff's complaint fails to state a claim upon which relief can be granted because the plaintiff cannot demonstrate that he is entitled to mandatory waiver of the debt under 5 U.S.C. § 5584. According to the Defendant, 5 U.S.C. § 5584 does not apply to the agency and the applicable FAA Order makes grant of a waiver request discretionary with the agency. Finally, the defendant asserts that plaintiff's other claims, including his claim for destruction of personal property and plaintiff's due process claims, are not within this court's jurisdiction. The parties responsively briefed the issues, with requests for extensions of time requested by both parties.

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties and by the court sua sponte. *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004), *cert. denied,* 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005); *Fanning, Phillips, Molnar v. West,* 160 F.3d 717, 720 (Fed.Cir.1998) (quoting *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir.), *reh'g denied* (1993)); *United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991); *North Star Alaska Hous. Corp. v. United States,* 76 Fed.Cl. 158, 185, *appeal dismissed,* 226 Fed.Appx. 1004 (Fed. Cir.2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." *Special Devices, Inc. v. OEA, Inc.,* 269 F.3d 1340, 1342 (Fed.Cir.2001) (citing *Johannsen v. Pay Less Drug Stores N.W., Inc.,* 918 F.2d 160, 161 (Fed.Cir.1990) and *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 115 F.3d 962, 963 (Fed.Cir.1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.")).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff must state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends...." RCFC 8(a)(1); Fed.R.Civ.P. 8(a)(1). When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *United Pac. Ins. Co. v. United States,* 464 F.3d 1325, 1327–28 (Fed.Cir.2006); *Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1343 (Fed. Cir.2002), *cert. denied,* 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003); *Pixton v. B & B Plastics, Inc.,* 291 F.3d 1324, 1326 (Fed.Cir.2002); *Commonwealth Edison Co. v. United States,* 271 F.3d 1327, 1338 (Fed. Cir.2001) (quoting *New Valley Corp. v. United States,* 119 F.3d 1576, 1580 (Fed.Cir.), *reh'g denied and reh'g en banc denied* (1997)), *cert. denied,* 535 U.S. 1096, 122 S.Ct. 2293, 152 L.Ed.2d 1051 (2002); *Boyle v.*

*United States,* 200 F.3d 1369, 1372 (Fed.Cir. 2000).

The court acknowledges that the plaintiff is proceeding *pro se.* Normally, *pro se* plaintiffs are entitled to liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972); *see also Hughes v. Rowe,* 449 U.S. 5, 9–10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). The United States Court of Appeals for the Federal Circuit has stated that;

Where, as here, a party appeared *pro se* before the trial court, the reviewing court may grant the *pro se* litigant leeway on procedural matters, such as pleading requirements. Indeed, the Supreme Court has recognized this less demanding standard. In *Hughes v. Rowe,* 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980), the Court concluded that the pleadings of *pro se* litigants should be held to a lesser standard than those drafted by lawyers when determining whether the complaint should be dismissed for failure to state a claim, because "[a]n unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims." *Id.* at 9, 101 S.Ct. 173, 66 L.Ed.2d 163; *see also Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" when determining whether to dismiss the complaint for failure to state a claim).

*McZeal v. Sprint Nextel Corp.,* 501 F.3d 1354, 1356 (Fed.Cir.2007); *see also Forshey v. Principi,* 284 F.3d 1335, 1357 (Fed.Cir.), *cert. denied,* 537 U.S. 823, 123 S.Ct. 110, 154 L.Ed.2d 33 (2002).

However, "there is no 'duty [on the part] of the trial court ... to create a claim which appellant has not spelled out in his pleading....'" *Scogin v. United States,* 33 Fed.Cl.

285, 293 (1995) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir.1975)) (alterations in original); *see also Minehan v. United States*, 75 Fed.Cl. 249, 253 (2007). "A complaint that is ... confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation...." *Scogin v. United States*, 33 Fed.Cl. at 293 (quoting *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775–76 (7th Cir.1994)) (alterations in original and citations omitted); *see also Merritt v. United States*, 267 U.S. 338, 341, 45 S.Ct. 278, 69 L.Ed. 643 (1925) ("The petition may not be so general as to leave the defendant in doubt as to what must be met.") (citations omitted). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860 (Fed.Cir.), *reh'g denied* (2004); *see also Edelmann v. United States*, 76 Fed.Cl. 376, 378 (2007). Moreover, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1322 (Fed.Cir. 1998). In this case, it appears that Mr. Woodruff holds himself out as an attorney and should be held to the higher standards as a member of the bar.

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. *See* 28 U.S.C. § 1491. The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. *See United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114, *reh'g denied*, 425 U.S. 957, 96 S.Ct. 1736, 48 L.Ed.2d 202 (1976) (citing *Eastport Steamship Corp. v. United States*, 178 Ct.Cl. 599, 605–06, 372 F.2d 1002, 1009 (1967)); *see also Palmer v. United States*, 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States*, 33 Fed.Cl. 474, 478 (1995), *aff'd*, 79 F.3d 136 (Fed.Cir.1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." *INS v. St. Cyr*, 533 U.S. 289, 299 n. 10, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *see also United States v. Nordic Village, Inc.*, 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *Marathon Oil Co. v. United States*, 374 F.3d 1123, 1126–27 (Fed.Cir.2004), *cert. denied*, 544 U.S. 1031, 125 S.Ct. 2246, 161 L.Ed.2d 1057 (2005); *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1372 (Fed.Cir.), *reh'g and reh'g en banc denied* (2001); *Saraco v. United States*, 61 F.3d 863, 864 (Fed.Cir. 1995) (quoting *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)), *cert. denied*, 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996). "If a statute is susceptible to a plausible reading under which sovereign immunity is not waived, the statute fails to establish an unambiguous waiver and sovereign immunity therefore remains intact." *Marathon Oil Co. v. United States*, 374 F.3d at 1127.

The Tucker Act confers jurisdiction on the United States Court of Federal Claims, however, " 'it does not create any substantive right enforceable against the United States for money damages.' " *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (quoting *United States v. Testan*, 424 U.S. at 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)), *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1372 (Fed.Cir.2001),

*aff'd,* 537 U.S. 465, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *Cyprus Amax Coal Co. v. United States,* 205 F.3d 1369, 1373 (Fed.Cir. 2000), *cert. denied,* 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *Khan v. United States,* 201 F.3d 1375, 1377–78 (Fed.Cir. 2000); *New York Life Ins. Co. v. United States,* 118 F.3d 1553, 1555–56 (Fed.Cir. 1997), *cert. denied,* 523 U.S. 1094, 118 S.Ct. 1559, 140 L.Ed.2d 792 (1998); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" *White Mountain Apache Tribe v. United States,* 249 F.3d at 1372 (quoting *United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)); *see also United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948; *Tippett v. United States,* 185 F.3d 1250, 1254 (Fed.Cir.1999) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" (quoting *James v. Caldera,* 159 F.3d 573, 580 (Fed.Cir.1998), *reh'g denied* (1999))): *Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir. 1996), *reh'g and reh'g en banc denied* (1997); *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. at 607, 372 F.2d at 1009.

■ In his complaint before this court, plaintiff alleges that the FAA erred in denying his request for a waiver. Plaintiff cites 5 U.S.C. § 5584 as establishing jurisdiction for this court to review his claims. Section 5584(a) authorizes Executive Branch agencies to waive debts owed to the United States:

A claim of the United States against a person arising out of an erroneous payment of pay or allowances the collection of which would be against equity and good conscience and not in the best interests of the United States, *may* be waived in whole or in part by—(1) the authorized official; [or] (2) the head of the agency....

5 U.S.C. § 5584(a) (emphasis added).

Section 5584(b) further provides:

The authorized official or the head of the agency, as the case may be, *may not* exercise his authority under this section to waive any claim—

(1) if, in his opinion, there exists, in connection with the claim, an indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee or any other person having an interest in obtaining a waiver of the claim....

5 U.S.C. § 5584(b)(1) (emphasis added).

In *Lawrence v. United States,* the court concluded: "The statute authorizing waiver by the agency, 5 U.S.C. § 5584, commits the decision whether to waive an employee's debt to the discretion of the agency and does not create the right to money damages." *Lawrence v. United States,* 69 Fed.Cl. 550, 554–555, *aff'd,* 206 Fed.Appx. 993 (Fed.Cir.2006). In arriving at this conclusion, the court also pointed out that the use of the word "may" in section 5584(a), or any other statute, creates a strong, but rebuttable, presumption that the provision is non-mandatory. *Id.* at 555. The court continued: "The only statutory limitations on the agency official's discretion are prohibitions against granting a waiver— 'if, in his opinion, there exists ... an indication of fraud, misrepresentation, fault or lack of good faith on the part of the employee ... having an interest in obtaining a waiver....'" *Id.* (quoting 5 U.S.C. § 5584(b)(1)). Since subsection (b)(1) specifically limits the agency official's discretion to waive a claim when specific factors are present, the conclusion regarding section (a), which uses the word "may" in the same statute, must be that the responsible agency official is vested with discretion to grant or deny a waiver in other circumstances, as the responsible agency official deems appropriate. *See id.* at 555–56 ("Thus, rather than commanding the official to pay money, the statute prohibits the official from forgiving a debt if any enumerated conditions have been met 'in his opinion.'"). Therefore, 5 U.S.C. § 5584 does not mandate the payment of money. *See id.* at 556 (citing

*United States v. White Mountain Apache Tribe,* 537 U.S. 465 at 472–73, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003) and *Fisher v. United States,* 402 F.3d 1167, 1174 (Fed.Cir.2005) (en banc)).

■ Moreover, plaintiff's reliance on 5 U.S.C. § 5584 in a claim against the FAA for failure to waive his debt is further misplaced. The FAA Personnel Management System is largely exempt from the provisions of Title V, including 5 U.S.C. § 5584, and has been since 1996 when Congress authorized the FAA to promulgate a personnel management system "for the Administration that addresses the unique demands on the agency's workforce." 49 U.S.C. § 40122(g)(1) (2000). "[T]he Act is clear concerning the applicability of title 5 to the new FAA system: with limited exceptions, title 5 'shall not apply to the new personnel management system developed and implemented pursuant to subsection (a)'; it therefore does not apply to FAA personnel." *Allen v. Merit Sys. Prot. Bd.,* 127 F.3d 1074, 1076 (Fed.Cir.1997) (citing the Department of Transportation and Related Agencies Appropriations Act, Pub.L. No. 104–50, § 347(b), 109 Stat. 436, 460 (1995)).

Thus, the plaintiff must look to FAA Order 2770.2G, the FAA's regulations and the FAA procedures for waiver requests. FAA Order 2770.2G(7)(a) (2000) is similar to 5 U.S.C. § 5584 in that it grants the agency discretion to waive a claim for erroneous payments. FAA Order 2770.2G(7)(a) (2000)[4] provides:

> A waiver *may* be granted only when collection would be against equity and good conscience, and not in the best interests of the United States. Generally, this criterion will be met by a finding that the erroneous payment occurred through administrative error and that there is no indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee.

FAA Order 2770.2G(7)(a) (2000) (emphasis added). Therefore, FAA Order 2770.2G

(2000), like 5 U.S.C. § 5584, vests discretion in the agency to issue waivers and is not money-mandating.

■ In filings subsequent to his amended complaint, the plaintiff attempts to rely on 5 U.S.C. § 5596 (The Back Pay Act) as the jurisdictional basis for his claims in this court, although the plaintiff's complaint was never amended to reflect this reliance. However, any reliance the plaintiff attempts to place on the Back Pay Act or its implementing regulations as an independent jurisdictional basis for an action in this court is unfounded. "[T]he Back Pay Act 'is merely derivative in application; it is not itself a jurisdictional statute.' *United States v. Connolly,* 716 F.2d 882, 887 (Fed.Cir.1983). Unless some other provision of law commands payment of money to the employee for the 'unjustified or unwarranted personnel action,' the Back Pay Act is inapplicable. *Ibid.*" *Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984); *see also Taylor v. United States,* 73 Fed.Cl. 532, 540 n. 14 (2006); *Ainslie v. United States,* 55 Fed.Cl. 103, 105 (2003) ("[T]he Back Pay Act is merely 'derivative' in application, *Connolly,* 716 F.2d at 887, and is money-mandating only when a plaintiff's claim is 'based on violations of statutes or regulations covered by the Tucker Act.'" (quoting *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.), *reh'g denied* (1999))); *Dixon v. United States,* 17 Cl.Ct. 73, 78 (1989). Thus, in order for this court to assert jurisdiction over a claim utilizing the Back Pay Act, the plaintiff must establish an independent ground for entitlement to money damages based on an unwarranted personnel action that violates a statute or regulation covered by the Tucker Act. *Jones v. United States,* 17 Cl.Ct. 78, 82–83 (1989). Moreover, as an FAA employee, the plaintiff may not invoke 5 U.S.C. § 5596 as an independent ground for entitlement to back pay because section 5596, as well as most of the provisions of Title V, do not apply to the FAA Personnel Management

---

4. FAA Order 2770.2E(6)(b)(1) (1992) similarly provides that a "[w]aiver *may* be granted only when collection would be against equity and good conscience and not in the best interests of the United States. Generally, these criteria will be met by a finding that the erroneous payment occurred through administrative error and that there is no indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee." FAA Order 2770.2E(6)(b)(1) (1992) (emphasis added).

System. *See* 49 U.S.C. § 40122(g)(1)-(2); *Alkalay v. United States*, 54 Fed.Cl. 93, 97 (2002).

■ In addition, the plaintiff may not rely on the FAA personnel management system as grounds for jurisdiction because back pay claims for FAA employees are not cognizable in this court. The FAA Personnel Management System, which authorizes the agency to pay back pay, provides that:

> Agency funds may be used to pay back pay to an FAA employee or former employee, who as the result of a decision or settlement under the FAA Grievance Procedure, a collective bargaining agreement, the FAA Appeals Procedure, or the Executive System Appeals Procedures is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or party of the pay, allowances, and differentials otherwise due to the employee.

FAA PMS Chapter II, § 9(a) (March 28, 1996). The FAA Personnel Management System establishes a Grievance Procedure (FAA PMS Chapter III § 4(a)), which "shall be the sole and exclusive method by which such employees seek relief from the FAA ....", and an FAA Appeals Procedure (FAA PMS Chapter III § 5(a)), which "is the only method by which employees ... may seek administrative review of claims arising out of a covered action...." Plaintiff must address the allegedly unwarranted pay actions by FAA personnel and contest the denial of all or part of his pay claims utilizing the FAA Personnel Management System procedures. FAA PMS Chapter II, § 9(a).

Although largely exempt from Title V, in 49 U.S.C. § 40122(g)(2)(H), sections 5 U.S.C. §§ 7701–7703 were made applicable to FAA employees. Therefore, an FAA employee "may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996." 49 U.S.C. § 40122(g)(3). Thus, the FAA is not exempt from the Merit Systems Protection Board appellate process. *See* 49 U.S.C.

§ 40122(g)(2)(H). Appeals from final orders or final decisions of the Merit Systems Protection Board are filed with the United States Court of Appeals for the Federal Circuit, not this court. *See* 5 U.S.C. § 7703 (2000).

■ The plaintiff also may not rely on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., or the Rehabilitation Act of 1973, 29 U.S.C. § 791, to assert jurisdiction or support his claims. With Title VII, Congress established administrative and judicial avenues of relief for federal employees to pursue discrimination claims, but not in this court. *See Lee v. United States*, 33 Fed.Cl. 374, 378 (1995); *Dixon v. United States*, 17 Cl.Ct. at 77. "Title VII is the comprehensive, exclusive and pre-emptive remedy for federal employees alleging discrimination." *Lee v. United States*, 33 Fed. Cl. at 378 (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Montalvo v. United States*, 17 Cl.Ct. 744, 748 (1989); *Fausto v. United States*, 16 Cl.Ct. 750, 753 (1989)). "The presence of a comprehensive, precisely-drawn statutory scheme providing for judicial review in another forum will pre-empt Tucker Act jurisdiction in this Court." *Lee v. United States*, 33 Fed.Cl. at 378; *see also Taylor v. United States*, 73 Fed.Cl. at 541 ("Tucker Act jurisdiction is preempted 'where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum ....'" (quoting *St. Vincent's Med. Ctr. v. United States*, 32 F.3d 548, 549–50 (Fed.Cir.1994))). In sum, Congress never intended for the United States Court of Federal Claims to have jurisdiction over claims brought under Title VII, and it is well settled that this court lacks jurisdiction to entertain actions brought under the statute. *See Lee v. United States*, 33 Fed.Cl. at 378; *Dixon v. United States*, 17 Cl.Ct. at 77 (citing 42 U.S.C. § 2000e–16 (1982)); *see also Elkins v. United States*, 229 Ct.Cl. 607, 608 (1981) ("[W]e do not have jurisdiction over claims based upon alleged violations of the civil rights laws."); *Phillips v. United States*, 77 Fed.Cl. 513, 519 (2007). This court also does not have jurisdiction to review claims brought under the Rehabilita-

tion Act of 1973. *See Mitchell v. United States,* 44 Fed.Cl. 437, 439 (1999) (concluding that this court is without jurisdiction to review remedies available under the Rehabilitation Act of 1973).

In *Dixon v. United States,* the plaintiff sought resolution of claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1982) (sex, race, color, religion, and natural origin), the Age Discrimination in Employment Act, 29 U.S.C. § 633a (1982) (age), and the Rehabilitation Act of 1973, 29 U.S.C. § 791 (1982) (handicap). *Dixon v. United States,* 17 Cl.Ct. at 76–77. The *Dixon* court found that: "[O]nce it is appropriate to proceed to court, the court that has jurisdiction is the appropriate United States District Court, not the United States Claims Court." *Dixon v. United States,* 17 Cl.Ct. at 77; *see also Hanes v. United States,* 44 Fed.Cl. 441, 449 (1999), *aff'd,* 243 F.3d 562 (Fed.Cir.). *reh'g denied* (2000) (table); *Blassingame v. United States,* 33 Fed.Cl. 504, 505, *aff'd,* 73 F.3d 379 (Fed.Cir.1995). *cert. denied,* 517 U.S. 1237, 116 S.Ct. 1885, 135 L.Ed.2d 179(1996).

Finally, the court notes that plaintiff's claims are further jurisdictionally defective. Plaintiff makes numerous allegations, including fraud, conversion or destruction of his property, mismanagement, falsification of records, violation of due process, retaliation, and forced retirement. A number of these claims (fraud, misrepresentation, mismanagement, falsification of records, forced retirement, that he was misled, and that the agency destroyed or retained his personal property), appear to sound in tort, for which jurisdiction does not reside in this court.

The Tucker Act expressly excludes tort claims from the jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. § 1491(a)(1); *Keene Corp. v. United States,* 508 U.S. 200, 214, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir.1998); *Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.), *reh'g denied* (1997); *Golden Pacific Bancorp. v. United States,* 15 F.3d 1066, 1070 n. 8 (Fed.Cir.). *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Agee v. United States,* 72 Fed.Cl. 284, 290 (2006);

*McCullough v. United States,* 76 Fed.Cl. 1, 4 (2006), *appeal dismissed on procedural grounds,* 236 Fed.Appx. 615 (Fed.Cir.), *cert. denied,* —— U.S. ——, 128 S.Ct. 675, 169 L.Ed.2d 529 (2007); *Zhengxing v. United States,* 71 Fed.Cl. 732, 739, *aff'd,* 204 Fed. Appx. 885 (Fed.Cir.), *reh'g denied* (2006).

In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated:

It is well settled that the United States Court of Federal Claims lacks—and its predecessor the United States Claims Court lacked—jurisdiction to entertain tort claims. The Tucker Act expressly provides that the "United States Court of Federal Claims shall have jurisdiction ... in cases *not* sounding in tort." 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 228 Ct.Cl. 146, 655 F.2d 1047, 1059 (1981).

*Shearin v. United States,* 992 F.2d 1195, 1197 (Fed.Cir.1993). In sum, this court does not possess subject matter jurisdiction to hear the plaintiff's tortious claims.

■ Plaintiff also alleges violations of the Due Process Clause of the Fifth Amendment to the United States Constitution, because the FAA's waiver procedure "was unreasonable and not done in a timely manner," and claims that the agency failed to provide a hearing on the matter of the waiver. Plaintiff's constitutional claims, likewise, are not within this court's jurisdiction. Not every claim involving, or invoking, the Constitution necessarily confers jurisdiction on this court. *Eastport Steamship Corp. v. United States,* 372 F.2d at 1009. In *United States v. Testan,* the United States Supreme Court stated:

Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim—whether it be the Constitution, a statute, or a regulation— does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis "in itself ... can fairly be interpreted as mandating com-

pensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States,* 372 F.2d at 1008, 1009.

*United States v. Testan,* 424 U.S. at 401–02, 96 S.Ct. 948.

In *Crocker v. United States,* the United States Court of Appeals for the Federal Circuit wrote: "The Court of Federal Claims correctly concluded that it does not have jurisdiction to hear [plaintiff's] due process ... claims under the Fifth Amendment to the United States Constitution." *Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir. 1997); *see also LeBlanc v. United States,* 50 F.3d 1025,1028 (Fed.Cir.1995) (finding that claims under the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of Separation of Powers do not invoke United States Court of Federal Claims' jurisdiction because "they do not mandate payment of money by the government."); *Collins v. United States,* 67 F.3d 284, 288 (Fed.Cir.) ("[T]he due process clause does not obligate the government to pay money damages."), *reh'g denied* (1995); *Mullenberg v. United States,* 857 F.2d 770, 773 (Fed.Cir.1988) (finding that the due pro-

cess clauses "do not trigger Tucker Act jurisdiction in the courts."); *Murray v. United States,* 817 F.2d 1580, 1583 (Fed.Cir.1987) (noting that the Fifth Amendment's Due Process Clause does not include language mandating the payment of money damages); *McCullough v. United States,* 76 Fed.Cl. at 4 ("[N]either the Fifth Amendment Due Process Clause ... nor the Privileges and Immunities Clause provides a basis for jurisdiction in this court because the Fifth Amendment is not a source that mandates the payment of money to plaintiff.").

### CONCLUSION

For the foregoing reasons, this court is without jurisdiction to address plaintiff's claims. The court **GRANTS** the defendant's motion to dismiss. The clerk's office shall **DISMISS** the plaintiff's complaint.

**IT IS SO ORDERED.**